Shirley RICE, Penelope S. Wirth, Ralph R. Lorberbaum and Jodie C. Lorberbaum, Individually and on Behalf of All Others Similarly Situated, Plaintiffs–Appellants,

v.

The BRANIGAR ORGANIZATION, INC., Defendant–Appellee.

No. 90–8090.

United States Court of Appeals, Eleventh Circuit.

Jan. 30, 1991.

J. Wiley Ellis, Adams, Gardner, Ellis, Inglesby, & Falligant, Laura J. Tromly, Ronald C. Berry, Thomas A. Nash, Jr., Inglesby, Falligant, Horne, Courington and Nash, PC, Savannah, Ga., for plaintiffs-appellants.

Frank W. Seiler, Leamon R. Holliday, III, Savannah, Ga., Edward A. Marod, West Palm Beach, Fla., for defendant-appellee.

Before POWELL, Associate Justice (Retired), United States Supreme Court, sitting by designation, TJOFLAT, Chief Judge, and ANDERSON, Circuit Judge.

POWELL, Associate Justice:

The primary questions presented in this case are: (i) was the sale of either lots in a housing development or equity memberships in a country club a sale of "securities" for the purposes of the 1934 Securities Act; and (ii) did appellee's representations about land-owners' access to the country club violate the anti-fraud provisions of the Interstate Land Sales Full Disclosure Act? We agree with the district court that both of these questions should be answered in the negative. As there is no issue of material fact on these two issues, we affirm the district court's grant of summary judgment for the appellee.

I

Appellee, the Branigar Organization, Inc. (Branigar), began a residential planned-unit development called the Landings in the early 1970's. The development site was located on a barrier island off the coast of Georgia. As part of the development, Branigar built a large country club with golf courses and tennis courts. The purchase price of a house or lot did not include the initiation fees and dues required for club membership. Yet, all residents could join by paying these fees, and most did.

Branigar decided to transfer ownership and management of the club in 1988. It created a non-profit corporation and transferred ownership of the club and all its facilities to that corporation. All the present members of the club will lose their usage rights by December 31, 1990. As of that date, only members owning an equity interest will be allowed to use the club.[1] All present non-equity members have been

---

1. The change will require eligible parties to purchase an ownership interest in the club in order to become a member and use the club's facilities.

offered the right to become equity members.

Appellants, four landowners who are also non-equity members of the club, filed a complaint in federal district court.[2] They alleged that the sale of equity memberships in the club and the sale of undeveloped lots amounted to a sale of unregistered securities in violation of the Securities and Exchange Act of 1934 (1934 Act), 15 U.S.C. § 78a *et seq.* They claimed that Branigar's failure to disclose that the non-equity club members would eventually be required to buy equity memberships to use the club was a misrepresentation violating 15 U.S.C. § 78j(b) and SEC Rule 10(b)(5). In addition, they also claimed that this same failure to disclose was made in connection with the sale of lots in the development, thus violating the Interstate Land Sales Full Disclosure Act (ISLA), 15 U.S.C. § 1701 *et seq.* Appellants included a common law contract claim alleging that Branigar had breached their non-equity club membership contracts.

The appellee moved for summary judgment after both parties had completed discovery. The district court granted the motion. It held that the appellee was entitled to a judgment at law on the securities claim because neither the lots nor the equity memberships were securities for the purposes of the Securities and Exchange Act of 1934. The court also held that the marketing material of the appellee contained neither a false statement nor an omission of material fact in violation of the ISLA. The court then dismissed the pendent contract claims. Appellants now appeal from the grant of summary judgment.

## II

■ We review the district court's grant of summary judgment as a matter of law. We apply the same legal standards as those controlling the trial court in determining whether summary judgment is proper. *Buxton v. City of Plant City,* *Florida,* 871 F.2d 1037, 1040 (11th Cir. 1989). A motion for summary judgment should be granted only if, viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact, and the moving party is entitled to a judgment as a matter of law. *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The party opposing a properly presented motion for summary judgment may not rest upon allegations or denials in his or her pleadings, but must set forth specific facts showing that there is a genuine issue for trial. *Id.* at 256–257, 106 S.Ct. at 2514–2515. All reasonable doubts, however, are to be resolved in the favor of the non-moving party, *Mercantile Bank & Trust Co., Ltd. v. Fidelity & Deposit Co.,* 750 F.2d 838, 841 (11th Cir.1985).

### A

Appellants challenge the district court's grant of summary judgment on their federal securities claims. To state a claim under the 1934 Act, appellants must show that the undeveloped lots or the equity memberships were "investment contracts" for the purposes of that act. 15 U.S.C. § 78c(a)(10). The United States Supreme Court has held that where those who purchase something with the primary desire to use or consume it, the security laws do not apply. *United Housing Foundation, Inc. v. Forman,* 421 U.S. 837, 95 S.Ct. 2051, 44 L.Ed.2d 621 (1975). In addition to looking at the motivations of the purchasers, the Supreme Court also has looked to the emphasis provided in the promotional material to determine whether the sale of something is a sale of "securities" for the purpose of federal securities law. *SEC v. C.M. Joiner Leasing Corp.,* 320 U.S. 344, 64 S.Ct. 120, 88 L.Ed. 88 (1943).

■ We hold that the lots are not securities under the 1934 Act. We believe that people buy houses and lots in a beach-club development primarily to use them, not to

---

**2.** The style of the case indicates that the four named appellants brought this suit individually and on behalf of others similarly situated. We note, however, that they have not been certified as a class under Rule 23(c) Fed.R.Civ.P. As appellees have not raised this issue, we need not address it.

derive profits from the entrepreneurial efforts of the developers. See *Forman*, 421 U.S. at 853, 95 S.Ct. at 2061. The appellants have not offered any evidence to show that the majority or even a fair number of the buyers bought houses or lots as an investment. Also, the promotional materials published to sell the lots at the Landings do not emphasize the investment value of the lots. Of the several marketing items introduced into evidence, there was only one passing reference to buying the property as an investment. See *Richard Rice et al. v. Branigar*, No. CV 489–120, slip op. at 8 n. 6 (S.D.Ga. Jan. 19, 1990). The overall emphasis in the promotional material was clearly placed on enjoying the beauty of the island and the amenities of the club and community. See e.g., Appellants Motion for Summary Judgment, June 27, 1989, Ex. A.

As for the equity membership contracts, we hold that they too are not securities for the purposes of the 1934 Act. Again, the economic reality is that the members bought the memberships to use the club's facilities; there is normally little reason to invest in the equity of a non-profit company.[3] Nor, has the appellee offered evidence that any people bought these memberships as investments. The promotional material was clearly aimed at selling the memberships to give the purchasers access to the club's facilities. In fact, in July of 1989, the appellee sent out letters to potential buyers explicitly instructing them, among other things, not to buy the memberships as investments. Appellee's Response to Motion for Preliminary Injunction, July 18 1989, Ex. D.

## B

Appellants next challenge the district court's granting of summary judgment on their fraud claims brought under the Interstate Land Sales Full Disclosure Act (ILSA), 15 U.S.C. §§ 1701 *et seq.*[4] Appellants first argue that there was a material issue of fact as to whether the appellee used the non-equity club membership agreement in the marketing of lots, and therefore the district court erred in granting summary judgment on this issue.[5] They claim that there was testimony offered to show that the membership agreements were used to help sell lots. They first point to testimony by Robert Allen, a former sales and marketing representative of the appellee. This testimony, however, is not relevant to the ISLA claims. Allen was associated with Branigar only through 1976, while the ISLA claims apply only to lots purchased since 1980.[6] Appellants also point to testimony by one of the appellants, Ralph Lorberbaum. Mr. Lorberbaum's testimony does not, however, address the issue of whether he was shown the membership agreement before he bought the property. We find no genuine issue of material fact on the issue of the use of the non-equity membership agreements in the sale of lots.

---

3. We note that both the Securities and Exchange Commission and the Georgia Commissioner of securities have issued no-action letters in connection with the sales of the equity memberships.

4. The ILSA requires that developers furnish prospective subdivision-lot purchasers with a property report that includes, among other things, information relating to recreational facilities associated with the subdivision. The Act is designed to protect land buyers by requiring that developers disclose material information. *Flint Ridge Dev. Co. v. Scenic Rivers Ass'n*, 426 U.S. 776, 96 S.Ct. 2430, 49 L.Ed.2d 205 (1976). In addition to setting up specific disclosure regulations, the ISLA also contains a general antifraud provision that makes it illegal to obtain money or property in connection with a development by means of a material false statement or any omission of a material fact necessary to make the statements made not misleading. 15 U.S.C. § 1703(a)(2).

5. Appellants argued that the district court should examine the terms of the membership contracts to determine whether or not the ISLA had been violated. The court refused to do so on the grounds that the purchase of the lots and the non-equity memberships were completely separate transactions, and that there was no evidence offered to show that the actual membership agreements were used in the marketing of the Landings.

6. Appellants allege the ISLA claims only on behalf of those who purchased land after June 21, 1980. Appellants Trial Brief, June 30, 1989 at 2.

■ Appellants also contend that the court erred as a matter of law in finding that there had been no false or misleading statements made by appellee in violation of the ISLA anti-fraud provision, 15 U.S.C. § 1703(a)(2). We disagree. Branigar's marketing materials contain no statements as to the future terms of the memberships, the duration of the memberships or any mention of price from which one could infer that land owners would never have to buy equity memberships in the future. In addition, throughout the time relevant to the ISLA claims, purchasers were on notice as to the potential change in the type of memberships. In the report filed pursuant to the ISLA, the appellee noted its right to sell the club. Branigar specified further that if the club were sold to the property owners and they had to pay for capital and maintenance costs, the current level of dues might have to be raised. See Motion for Summary Judgment July 7, 1989, Ex. B. Appellants do not dispute these facts. As a matter of law, we hold that appellee made no false statements or omissions of material fact in violation of 15 U.S.C. § 1703.

### III

■ Appellants devote much of their brief to arguing the merits of their state law contract claims. We do not address these issues because the district court did not hear or decide these claims on their merits. The district court did, however, dismiss them without prejudice following the grant of summary judgment. When a district court dismisses all of the federal claims before trial, the decision whether or not to exercise pendent jurisdiction over state-law claims is within its discretion. *Tinker v. DeMaria Porsche–Audi, Inc.,* 632 F.2d 520, 523 (5th Cir. Unit B, 1980). A district court can abuse its discretion under these circumstances only by dismissing the pendent claims when no state forum is available. *Ray v. Tennessee Valley Authority,* 677 F.2d 818 (11th Cir.1982). The court below specifically found that the claim could still be heard in a state forum, and appellants have not argued otherwise. Consequently, we find that the district court did not abuse its discretion by dismissing appellant's state law claims.

### IV

The decision of the district court granting summary judgment for appellee on the federal claims and dismissing the state law claims is—

AFFIRMED.