977 F.2d 580
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Vito DECORE, Plaintiff-Appellee,
v.
CITY OF PARMA, Ronald Mottl, Jr., Mark Daniels, Michael
Ries, Defendants-Appellants
 No. 91-4170.
 United States Court of Appeals, Sixth Circuit.
 Oct. 7, 1992.
 
 1
 Before MILBURN and RALPH B. GUY, Jr., Circuit Judges, and COOK, Chief District Judge.[1]
 
 
 2
 JULIAN ABELE COOK, Jr., Chief District Judge.
 
 
 3
 This interlocutory appeal[2] by the Appellants, City of Parma, Ohio, Ronald Mottl, Mark Daniels, and Michael Ries,[3] relates to the denial of their motion for summary judgment by the district court. For the reasons that have been set forth below, the decision of the district court is affirmed.
 
 I.
 
 4
 Beginning in 1971, Vito DeCore was a systems analyst programmer in the data processing department of the City of Parma, Ohio. Most of his work tenure with the City occurred during a time when John Petruska and Joseph Lime served as mayor and auditor, respectively. However, Petruska was unsuccessful in his bid for re-election in 1987, and Lime declined to seek an additional term of office. As a result of the elections, Ries became the new mayor of the City, and Mottl assumed the duties of the municipal auditor.[4]
 
 
 5
 In January 1988, Mottl appointed Daniels, who holds a bachelors degree in political science and a masters degree in organizational communications from Cleveland State University, as the manager of the City's data processing department. Shortly thereafter, Mottl and Daniels implemented a complete reorganization of the data processing department in an effort to improve its operational efficiency. The center of this reorganization plan was the purchase of an IBM AS/400 (AS/400) computer and a switch from in-house programming procedures to the utilization of software that had been developed by outside companies. This reorganization plan effectively eliminated some of DeCore's important responsibilities as the systems analyst programmer. As a result, he was laid off from his position during the following month. Eventually, the entire systems analyst programmer position was abolished by the City Council.
 
 
 6
 On January 25, 1990, DeCore filed a lawsuit under 42 U.S.C. § 1983, complaining that he had been wrongfully terminated for exercising his First Amendment rights. In response, the Appellants filed a motion for summary judgment, contending that they were entitled to the defense of qualified immunity against DeCore's charges. Following a hearing on the issue, Judge Alvin I. Krenzler denied the Appellants' motion:
 
 
 7
 [T]his Court concluded that it could not state as a matter of law that these individual defendants were entitled to qualified immunity. There was a substantial conflict in the testimony and, in order to determine the issue of qualified immunity, it is necessary to determine that the defendants acted objectively reasonable under clearly established law. When there is a conflict in the testimony, that conflict must be resolved at trial, and the jury shall decide the issue of qualified immunity at that time.
 
 
 8
 Joint Appendix. at 25-6.
 
 II.
 
 9
 The Appellants contend that they are entitled to the qualified immunity defense, noting that the positions of mayor, law director, treasurer, auditor, and council president are five autonomous executive offices within City government. They assert that the auditor was the only person in City government who had authority over the operations or matters relating to personnel in the data processing department. It is their position that Reis had no authority as mayor to effect change or make any substantive decisions with regard to a reorganization of the data processing department. In fact, the Appellants assert that his only connection with this dispute were his roles in securing the money, with which to purchase the AS/400 computer, and in the abolishment of the systems analyst position.
 
 
 10
 The Appellants also maintain that DeCore's position was eliminated only because of the collective efforts by Mottl and Daniels to make their department more efficient. It is their position that Decore's job responsibilities, which included the development of in-house software, troubleshooting, and working with other municipal governmental departments, became obsolete because the AS/400 computer (1) was self-diagnostic and able to run directly on-line, (2) utilized "canned" (or commercial) software, and (3) would save the money for the City.
 
 
 11
 Under the criteria that was established in Johnson v. Estate of Laccheo, 935 F.2d 109 (6th Cir.1991), the Appellants say that this court must decide whether (1) DeCore has identified a clearly established right that has been violated, and (2) reasonable officials in their respective positions should have known that their actions violated that right. Furthermore, it is their collective opinion that even if DeCore had been removed for political reasons, they had the right to terminate him under the standards of Mt. Healthy City School District Bd. v. Education of Doyle, 429 U.S. 274 (1977), because his position was destined for elimination under the now-challenged reorganization plan.
 
 
 12
 In response, DeCore says that Mottl and his opponent, Gerald Boldt, sought the democratic nomination for City auditor shortly after Lime announced his intention not to run for reelection. Decore acknowledges that he gave money to Boldt's campaign and spoke favorably about him among his friends and associates. The primary election was extremely close, with Mottl winning by a margin of less than ten votes. A recount was conducted. DeCore represented Boldt's interests during the recount proceedings, while Daniels was the representative for Mottl.
 
 
 13
 DeCore claims that Mottle spoke with him and a fellow employee, Harold Barr, prior to the primary election about their future employment with the City in an ostensible effort to dissuade them from lending their support to Boldt. Thereafter, for reasons that have not been disclosed on the record, Barr chose to retire.[5] Thus, on the basis of Mottl's conversation with him and his participation in the Boldt election efforts, he believes that Mottl and Daniels intended to terminate him prior to the acquisition of the AS/400 computer by the City.
 
 
 14
 DeCore submits that his relationship with Ries began to deteriorate during a City Council meeting, in which they publicly exchanged conflicting views regarding the viability of retaining an old computer system. He claims that shortly after this meeting, the Appellants initiated their conspiracy of harassment in an effort to force him to leave his job. According to Decore, these harassing incidents included (1) the removal of his authority over access to other data entry personnel, (2) the confiscation of the keys to his office and the City Hall, (3) the termination of his parking privileges, and (4) the partial elimination of some of his significant office responsibilities.
 
 
 15
 DeCore submits that the district court correctly employed the standard of determining whether there was a conflict in the record which was "sufficiently material to [Appellants'] claim of immunity to require them to stand trial." DeVargas v. Mason & Hanger-Silas Mason Co., 844 F.2d 714 (10th Cir.1988). He cites Poe v. Haydon, 853 F.2d 418 (6th Cir.1988) cert. denied, 488 U.S. 1007 (1989), and argues that the Appellants have the burden of showing that no material facts exist if he has established a clear violation of the law.
 
 
 16
 It is DeCore's position that the law, which determined that a public employer could not terminate an employee for exercising his freedom of speech and association, was settled prior to his termination from employment with the City. He also maintains that the Appellants' reorganization argument was only a pretext for their real reason for his job termination. For these reasons, he seeks a denial of this appeal.
 
 III.
 
 17
 Governmental officials enjoy an immunity from liability in civil actions unless (1) their conduct violates clearly established statutory or constitutional rights that a reasonable person would have known, or (2) their actions are taken with the malicious intention to cause the deprivation of constitutional or statutory rights. Harlow v. Fitzgerald, 452 U.S. 800, 815, 818 (1982).
 
 
 18
 In deciding a motion for summary judgment that is based upon qualified immunity, the district court must first determine if a clearly established right existed at the time of the alleged oppressive conduct. To determine if a right is clearly established at the time of the alleged violation, the court must examine the "federal constitutional, statutory or case law existing at that time." Dominque v. Telb, 831 F.2d 673 (6th Cir.1987). With respect to case law, the decisions of the Supreme Court, this circuit, and the highest court of the state where the case arose must be examined. Hall v. Shipley, 932 F.2d 1147 (6th Cir.1991); Eugene D. v. Karman, 889 F.2d 701 (6th Cir.1989), cert. denied, --- U.S. ----, 110 S.Ct. 2631 (1990). The challenged right must be particular or defined enough to allow any reasonable official to sense that his conduct violates that right. Anderson v. Creighton, 483 U.S. 635 (1987); Danese v. Asman, 875 F.2d 1239 (6th Cir.1989), cert. denied, 494 U.S. 1027 (1990).
 
 
 19
 Along with this determination, the trial court must determine whether the complainant has alleged a constitutional violation. Siegert v. Gilley, --- U.S. ----, 111 S.Ct. 1789 (1991). In a motion which seeks the entry of a summary judgment, the court must view all facts and inferences in a light that is most favorable to the nonmoving party. Rice v. Branigar Organization, Inc., 922 F.2d 788 (10th Cir.1991); Nicolette v. Carey, 751 F.Supp. 695 (W.D.Mich.1990).
 
 
 20
 Under Poe v. Haydon, 853 F.2d 418, 425-6 (6th Cir.1988),
 
 
 21
 If the undisputed facts show that the defendant's conduct, ... did not violate clearly established rights, then the district court must grant the defendant summary judgment based upon qualified immunity.
 
 
 22
 ....
 
 
 23
 On the other hand, summary judgment would not be appropriate if there is a factual dispute ... involving an issue on which the question of immunity turns....
 
 
 24
 In 1976, the Supreme Court determined that patronage dismissals infringe upon protected First Amendment rights of speech and association. Elrod v. Burns, 427 U.S. 347 (1976). See, also Branti v. Finkel, 445 U.S. 346 (1980). Although the protection is not absolute, the government interest must be compelling. As stated in Elrod,
 
 
 25
 [I]f the conditioning of retention of public employment on the support of the in-party is to survive constitutional challenge, it must serve some vital government end....
 
 
 26
 In 1977, the Supreme Court affirmed this principle but provided that no constitutional violation, which would justify the imposition of a remedy, exists if an employer can demonstrate by a preponderance of the evidence that the employee would have been terminated in any event. Mt. Healthy City Board of Ed. v. Doyle, 429 U.S. 274 (1977).
 
 
 27
 At the time of DeCore's lay off in February 1989, the law was settled that political patronage dismissals were unconstitutional. In fact, the Appellants do not dispute that the termination of a municipal employee for political reasons--in the absence of more--would constitute a violation of his First Amendment rights. However, they argue that DeCore's termination was based upon a reorganization plan, not his political association or speech. Moreover, they assert that the purchase of the AS/400 computer would have eliminated the need for the retention of his position even if the district court had found their actions to have been politically motivated.
 
 
 28
 We agree with the district court that these arguments do not entitle the Appellants to a defense of qualified immunity at this juncture. DeCore has presented evidence which challenges the Appellants' claim that the AS/400 computer reduced and eliminated the need for his services. Viewing the evidence in a light most favorable to DeCore, a suggestion remains that his political ties to the former mayor and auditor were substantial factors in their decision to exclude him from any reorganization.
 
 
 29
 Thus, the Appellants' motivations remain unresolved. Under the circumstances of this case, the district court did not err in refusing to enter a summary judgment on the basis of qualified immunity. Accordingly, the district court's denial of the qualified immunity defense is affirmed.
 
 
 
 [1]
 Honorable Julian Abele Cook, Jr., Chief United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [2]
 This appeal has been filed pursuant to Fed.R.Civ.P. 54 and 28 U.S.C. § 1291
 
 
 [3]
 The individual Appellants are public officials with the City of Parma, Ohio municipal government
 
 
 [4]
 One of the responsibilities of the City auditor is to administer the operations within the data processing department
 
 
 [5]
 There is some conflict over which employees were questioned about their jobs