Leroy SAMPLE, Plaintiff,

v.

**SCHULLER INTERNATIONAL, INC., Manville Sales Corp., and Manville Roofing Systems, a division of Schuller International Inc., Defendants.**

No. CV493–010.

United States District Court, S.D. Georgia, Savannah Division.

Oct. 22, 1993.

---

Elizabeth F. Bunce, Franklin, Taulbee, Rushing & Bunce, Statesboro, GA, for Leroy Sample.

J. Wiley Ellis, Laura Jean Tromly, Adams, Gardner & Ellis, Savannah, GA, Robert P. Foster, Fisher & Phillips, Atlanta, GA, for Schuller Intern. Inc.

J. Wiley Ellis, Adams, Gardner & Ellis, Savannah, GA, Robert P. Foster, Fisher & Phillips, Atlanta, GA, for Manville Sales Corp. and Manville Roofing Systems, a div. of Schuller Intern. Inc. ·

## ORDER

EDENFIELD, Chief Judge.

Before the Court are the Defendant's motion to dismiss or to strike Plaintiff's Section 1981 claim, claims for compensatory and punitive damages, and jury trial demand; and the Defendant's motion for summary judgment on the Plaintiff's claims of race discrimination and retaliation under Title VII of the Civil Rights Act and 42 U.S.C. § 1981. For the reasons below, the Defendant's motions are **GRANTED** and this cause of action is **DISMISSED**.

## FACTS

The Plaintiff began working for the Defendant in 1986, after the Defendant purchased a Jamesburg, New Jersey facility that the Plaintiff had been working in for fourteen years. The Defendant closed the Jamesburg facility in 1990 for economic reasons. Most of the employees at that facility were terminated when the facility closed, but the Plaintiff was offered the choice of transferring to a facility in Savannah, Georgia or Rockdale, Illinois. The Plaintiff elected to transfer to Savannah.

At the time the Plaintiff began work in Savannah, he had no experience with the manufacturing process for roofing and there were no supervisory positions available for him. The Defendant trained the Plaintiff in the roof manufacturing process. Eventually, for reasons that are disputed, Renny Johnson, a line supervisor, was moved to the shipping department. The Plaintiff took over Mr. Johnson's shift in the production department.

As a result of an economic downturn, the Defendant was forced to layoff two of their five supervisors. The layoff decision was made by Doug Cunningham, Defendant's Production Superintendent, who asserts that he ranked the five supervisors on five qualities that he considered essential—leadership, clerical, process, mechanical, and communication—and chose the two lowest ranked supervisors for layoff. The Plaintiff was laid off on November 20, 1991. The Defendant does not assert that the Plaintiff was a poor supervisor. The Defendant maintains that the Plaintiff would not have been terminated but for the necessary reduction in force. Since termination, the Defendant has offered the Plaintiff employment at three other facilities.

The Plaintiff admits that he does not know how the decision to terminate him was made, but he argues that the proffered reason must be pretextual because both of the supervisors that were terminated were black and because he was, in fact, a better supervisor than Renny Johnson, one of the supervisors retained. The Plaintiff also takes issue with the accuracy of the data used by Mr. Cunningham in making his decision. Most, if not all, of the Plaintiff's evidence in this regard, however, is hearsay. The Court notes at the onset that the Plaintiff's case is weak.

## ANALYSIS

### 1. 12(b)(6) Motion To Dismiss

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a defendant to move to dismiss a complaint on the ground that the plaintiff has failed to state a claim upon which relief can be granted. In determining the merits of a 12(b)(6) motion, a court is to assume that all of the factual allegations of the complaint are true, e.g., United States v. Gaubert, 499 U.S. 315, 327–28, 111 S.Ct. 1267, 1276, 113 L.Ed.2d 335 (1991); Powell v. Lennon, 914 F.2d 1459, 1463 (11th Cir.1990), and construe them in the light most favorable to the plaintiff. E.g., Sofarelli v. Pinellas County, 931 F.2d 718, 721 (11th Cir.1991) "A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts consistent with the allegations." Hishon v. King & Spaulding, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984) (citation omitted); see Bank v. Pitt, 928 F.2d 1108, 1111–12 (11th Cir.1991) (per curiam).

The Defendant has moved to dismiss or strike Plaintiff's claims for damages under

Section 1981 and Title VII of the Civil Rights Act and his demand for a jury trial. The Civil Rights Act of 1991 became effective November 21, 1991. The Civil Rights Act of 1991, Pub.L. No. 102–166, 105 Stat. 1071 (1991); *Vance v. Southern Bell Telephone & Telegraph Co.*, 983 F.2d 1573, n. 10 (11th Cir.1993). Furthermore, the Eleventh Circuit has expressly held that the 1991 Act is *not* retroactive. *Baynes v. AT & T Technologies, Inc.*, 976 F.2d 1370 (11th Cir.1992); *Vance*, 983 F.2d at 1577.

The only discrimination alleged in this cause of action occurred at the time of the Plaintiff's termination. While there is a clause in the Defendant's answer indicating that the layoff was effective December 31, 1991, the evidence demonstrates that the Plaintiff was actually terminated on November 20, 1991. (*See* Sample Aff. ¶ 13; Joint Status Report at 3; Compl. ¶ 16.). Since all the events forming the basis of this cause of action occurred prior to the effective date of the Civil Rights Act of 1991, that act is not applicable to this case.

■ Before the effective date of the Civil Rights Act of 1991, Title VII did not permit recovery of compensatory or punitive damages, the Civil Rights Act of 1964, § 706(g), 42 U.S.C.A. § 2000e–5(g); *Weaver v. Casa Gallardo, Inc.*, 922 F.2d 1515, 1529 (11th Cir.1991); *Walker v. Ford Motor Co.*, 684 F.2d 1355, 1364 (11th Cir.1982), and did not provide for a jury trial, *Great American Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 375, 99 S.Ct. 2345, 2350, 60 L.Ed.2d 957 (1979); *Hill v. Winn–Dixie Stores, Inc.*, 934 F.2d 1518, 1525 (11th Cir.1991). Additionally, before the effective date of the 1991 Act, Section 1981 did not apply to discriminatory discharge or retaliation claims. *See* 42 U.S.C.A. § 1981(a) (West 1981 & Supp.1992); *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989); *Vance*, 983 F.2d at 1576; *Thompkins v. De-Kalb County Hospital Authority*, 916 F.2d 600, 601 (11th Cir.1990). Since all events forming the basis of Plaintiff's claims occurred prior to the effective date of the 1991 Act, it is clear that the law allows no relief for the Plaintiff's claim's under Section 1981. More so, there is no foundation for the Plain-tiff's prayer for punitive and compensatory damages or his demand for a trial by jury. Accordingly, these claims are **DISMISSED.**

## 2. *Summary Judgment*

"[T]he purpose of Rule 56 is to enable a party who believes there is no genuine dispute as to a specific essential fact to demand at least one sworn averment of that fact before the lengthy process of litigation continues." *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888–89, 110 S.Ct. 3177, 3188–89, 111 L.Ed.2d 695 (1990). The Court's analysis ends "where there is no genuine issue of material fact and where the moving party is entitled to judgment as a matter of law." *Great Lakes Dredge & Dock Co. v. Tanker Robert Watt Miller*, 957 F.2d 1575, 1578 (11th Cir.1992); *Real Estate Fin. v. Resolution Trust Corp.*, 950 F.2d 1540, 1543 (11th Cir.1992) (both citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)). Summary judgment is appropriate where the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552; *Tidmore Oil Co. v. BP Oil Co./Gulf Prods. Div., a Div. of BP Oil Co.*, 932 F.2d 1384, 1387–88 (11th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 339, 116 L.Ed.2d 279 (1991).

A dispute of material fact "is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *United States v. Gilbert*, 920 F.2d 878, 883 (11th Cir.1991) (citation omitted). The nonmovant "must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Liberty Lobby*, 477 U.S. at 257, 106 S.Ct. at 2514; *Gilbert*, 920 F.2d at 882. Mere conclusory statements or reliance on the pleadings, *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553, or a mere "scintilla" of evidence supporting the opposing party's position will not suffice, *e.g.*, *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir.1990).

In assessing whether the movant is entitled to summary judgment in its favor, the Court must review the evidence and all reasonable factual inferences arising from it in the light most favorable to the nonmoving party. *Welch v. Celotex Corp.*, 951 F.2d 1235, 1237 (11th Cir.1992); *Ryder Int'l Corp. v. First Am. Nat'l Bank*, 943 F.2d 1521, 1523. The Court must avoid weighing conflicting evidence, *Liberty Lobby*, 477 U.S. at 255, 106 S.Ct. at 2513; *Ryder*, 943 F.2d at 1523; *Brown v. Hughes*, 894 F.2d 1533, 1536 (11th Cir.), *cert. denied*, 496 U.S. 928, 110 S.Ct. 2624, 110 L.Ed.2d 645 (1990); *Tippens v. Celotex Corp.*, 805 F.2d 949, 953 (11th Cir. 1986), or making credibility determinations, *Liberty Lobby*, 477 U.S. at 255, 106 S.Ct. at 2513; *McKenzie v. Davenport–Harris Funeral Home*, 834 F.2d 930, 934 (11th Cir. 1987).

The evidence need not be in a form that would be admissible at trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir.1988), as long as it could be reduced to admissible evidence. *Celotex*, 477 U.S. at 327, 106 S.Ct. at 2554; *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1444 (11th Cir.1991). Flexibility is offered only in the form of the evidence submitted on summary judgment, but this flexibility does not eliminate a party's need to comply with the rules of evidence. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553.

The Defendant has moved for summary judgment on the Plaintiff's claims for race discrimination and retaliatory termination under Title VII and Section 1981. Above, the Court dismissed the Plaintiff's claims under Section 1981 and the Civil Rights Act of 1991. Furthermore, Plaintiff's counsel has withdrawn and abandoned the claim for retaliatory termination. (*See* Pl.'s Resp. to Def.'s Motion for Sum.J. at 13.) Thus, only a claim for race discrimination under Title VII of the Civil Rights Act of 1964 remains for consideration under this motion.

■ To recover under Title VII, a plaintiff must make out a prima facie case of discrimination by either: (1) direct evidence of intent to discriminate; (2) statistical evidence demonstrating a pattern of discrimination; or (3) satisfying the test first set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and recently interpreted in *St. Mary's Honor Center v. Hicks*, —— U.S. ——, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). The Plaintiff concedes that there is no direct evidence of discrimination in this case. (Pl.'s Resp. to Def.'s Mot. for Sum.J. at 5.) Furthermore, the Plaintiff has not argued a statistical case from which an inference of discrimination might arise. Thus, this analysis is limited to the method of proof set out in *McDonnell Douglas*.

■ In *McDonnell Douglas* and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), the Supreme Court created a system clarifying the allocation of burdens and the order of presentation of proof for discrimination cases. Under this system, the Plaintiff must first prove a *prima facie* case of discrimination. *Burdine*, 450 U.S. at 252, 101 S.Ct. at 1093. In reduction in force termination cases, the plaintiff establishes a *prima facie* case by proving, by a preponderance of the evidence, that (1) he is a member of a protected class; (2) he was qualified for the position he held prior to termination; (3) he was terminated; and (4) either the plaintiff's former position was filled by a non-minority, or the plaintiff was terminated while lesser qualified persons not in the plaintiff's protected class were retained, or the plaintiff suffered from differential application of work disciplinary rules. *Weaver*, 922 F.2d at 1525.

It is undisputed that the Plaintiff has met the first three prongs of the *prima facie* case. The Defendant argues that the evidence in this case does not meet the fourth prong and thus does not support an inference. Nonetheless, it is clear that the retained supervisors were all white and the terminated supervisors were all black. While the Court tends to agree with the Defendant in theory, the Court must give the Plaintiff the benefit of all doubt. Thus, the Court will treat this case as if the Plaintiff made his *prima facie* case.

■ Establishment of a "prima facie" case shifts the burden to the defendant to *produce* a legitimate, nondiscriminatory rea-

son for the termination. To satisfy this burden, the defendant must set forth admissible evidence which, if believed by the trier of fact, would support a finding that unlawful discrimination was not a cause of the adverse employment action. *Burdine*, 450 U.S. at 254–55, 101 S.Ct. at 1094–95. The record in this case speaks for itself. The Defendant has put forth uncontradicted evidence that he used a ranking system that was not facially discriminatory and that race was not a factor in his decision. This satisfies the Defendant's burden of production.

■ Once a defendant *produces* this evidence, the presumption against the defendant is rebutted, destroyed and no longer relevant. *Hicks*, —— U.S. at ——, 113 S.Ct. at 2747 (citing *Burdine*, 450 U.S. at 255, 101 S.Ct. at 1095). Under *Hicks*, evidence of pretext alone does not compel a finding of intentional discrimination; however, evidence of pretext, if it exists, can support a conclusion of discrimination if corroborated by other evidence. Even so, in order to survive summary judgment at this stage, the Plaintiff must present affirmative evidence, *Liberty Lobby*, 477 U.S. at 257, 106 S.Ct. 2514, that " 'the proffered reason was not the true reason for the employment decision' and that race was." *Id.* (citing *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095). Mere conclusory statements or reliance on the pleadings, *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553, or a mere "scintilla" of supporting evidence will not suffice, *e.g., Darby*, 911 F.2d at 1577.

■ The Plaintiff cannot present affirmative evidence of discrimination sufficient to withstand summary judgment. Plaintiff argues that the fact that both terminated supervisors were black while all the retained supervisors were white indicates that the Defendants' proffered reasons for its decisions are pretextual. This is plainly not true. A sample size of five is not sufficient to make any statistical finding of discrimination. *See, Pace v. Southern R. Sys.*, 701 F.2d 1383, 1389 (11th Cir.), *cert. denied,* 464 U.S. 1018, 104 S.Ct. 549, 78 L.Ed.2d 724 (1983); *Williams v. Tallahassee Motors, Inc.*, 607 F.2d 689, 693 (5th Cir.1979). Furthermore, there is no evidence that the two supervisors that were laid off did not rank lowest on Mr. Cunningham's ranking system. In fact, the Plaintiff admitted that he did not even know what criteria were used by Mr. Cunningham in making his decision.

Plaintiff asserts that he was, in fact, a better supervisor than Renny Johnson, one of the retained supervisors. "Better," however, is a subjective determination. To support his contention, the Plaintiff puts forth evidence, much of which is uncorroborated hearsay, to indicate that his performance was superior to Mr. Johnson's performance and that Mr. Johnson had "poor" supervisory skills and a bad temper. The Defendant *does not* contend that the Plaintiff was a poor supervisor. Indeed, since the termination, the Defendant has offered the Plaintiff employment in three of its other facilities. The uncontroverted evidence is that Mr. Cunningham ranked the five supervisors according to a facially neutral ranking system and when the results were tallied, Mr. Johnson ranked above the Plaintiff.

The Plaintiff contends that Mr. Cunningham knew that the Plaintiff was a better supervisor than Mr. Johnson and that such knowledge indicates that Mr. Johnson actually did not choose whom he thought was best for the job. While much of the Plaintiff's evidence is of questionable admissability, the Court accepts it for the purpose of this motion. The Plaintiff points to evidence of Mr. Johnson's bad temper and less-than-ideal supervisory method. But, that Mr. Johnson has a bad temper or has a gruff, archaic method of supervising is not at issue—race is. There is no inference of racial discrimination that arises from these facts.

The Plaintiff also argues that the criteria used by Mr. Cunningham were skewed against him and that Mr. Cunningham operated with faulty and inaccurate data in making his decision. Again, Plaintiff admitted that he did not know what criteria were used in making the termination decision. Additionally, it is wholly irrelevant that the criteria used by Mr. Cunningham discriminated against the Plaintiff—provided that it did not discriminate against him because of his race. All ranking systems, by their nature, discriminate in some form or another against individuals—indeed, that is their function.

There is no evidence that the factors used by Mr. Cunningham were racially discriminatory.

Finally, even if the Plaintiff was in fact a better supervisor than Mr. Johnson, even if Mr. Cunningham made a mistake in developing or applying his five criteria ranking system, and even if in Mr. Cunningham's view (apart from his ranking system) the Plaintiff was a better supervisor than Mr. Johnson, there is no affirmative evidence that race was a factor in the termination decision. In fact, the record strongly supports the contrary conclusion. For example, the Defendant retrained and transferred the Plaintiff to Savannah to avoid his termination in 1990, the Defendant made the Plaintiff a supervisor and gave him regular pay increases, and, since the termination, the Defendant has offered the Plaintiff three employment opportunities. While these facts do not go directly to the termination decision, they are also not indicatory of a discriminatory relationship. Title VII was never intended to become a vehicle whereby a trier of fact evaluates and second guesses the propriety of legitimate decisions made by people in Mr. Cunningham's position.

The Plaintiff has the " 'ultimate burden of persuading the [trier of fact] that [he] has been the victim of intentional discrimination.' " *Hicks,* —— U.S. ——–——, 113 S.Ct. at 2747–48 (quoting *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095). Normally this would be a question for the jury, but where the evidence, taken as a whole, is such that a reasonable jury could not return a verdict for the nonmoving party, summary judgment is appropriate. *Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. at 2510. In this case, a reasonable jury could not conclude that the Defendant discriminated against the Plaintiff in a manner prohibited by Title VII. Accordingly, Defendant's motion for summary judgment is **GRANTED.**

### 3. What is left: Intentional Infliction of Emotional Distress

With the Plaintiff's federal claims dismissed above, the only claim remaining in this case is a pendent state law claim for intentional infliction of emotional distress.

Unfortunately, the Defendant did not move for summary judgment on this count, and thus, the Court is without power to analyze its merits. However, "where a district court dismisses all federal claims before trial, the decision to whether or not to exercise pendent jurisdiction over state-law claims is within its discretion. *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 357, 108 S.Ct. 614, 623, 98 L.Ed.2d 720 (1988); *Rice v. Branigar Organization, Inc.,* 922 F.2d 788, 792 (11th Cir.1991) (citations omitted). The Court abuses this discretion only where no state forum is available. *Rice,* 922 F.2d at 792 (citing *Ray v. Tennessee Valley Authority,* 677 F.2d 818 (11th Cir.1982)). There is no danger in this case of state forum limitations because Georgia law allows renewal of a case involuntarily dismissed by a federal court within six months of the dismissal provided that the dismissal was not on the merits. O.C.G.A. § 9–2–61 (1988 and Supp. 1993); *O'Neal v. Dekalb County,* 667 F.Supp. 853 (N.D.Ga.1987), *aff'd* 850 F.2d 653 (11th Cir.1988); *Swartzel v. Garner,* 193 Ga.App. 267, 387 S.E.2d 359 (1989). The Court, after considering issues of judicial economy, convenience, comity, and fairness, concludes that the Plaintiff's state law claim for intentional infliction of emotional distress would be best pursued in a state forum, if at all. Accordingly, the Plaintiff's claim is **DISMISSED.**

### CONCLUSION

The Court is convinced, as a matter of law, that the Defendants have not discriminated against the Plaintiff on account of his race. For this reason, and for the procedural reasons discussed above, the Defendants' motion to dismiss and motion for summary judgment are **GRANTED.** Consequently, all of the Plaintiff's federal claims are **DISMISSED.** Additionally, all federal claims having been dismissed, the Court concludes that Plaintiff's remaining state-law claim should be pursued in a state forum, if at all. Accordingly, the Plaintiff's state law claim for intentional infliction of emotional distress is **DISMISSED.**

SO ORDERED.