**Charlotte ARCADI, on behalf of herself and all other employees similarly situated, Plaintiff,**

v.

**NESTLE FOODS CORPORATION, Defendant.**

**No. 92–CV–420 FJS.**

United States District Court, N.D. New York.

Jan. 14, 1994.

Cornfield & Feldman (Richard J. Tupper, of counsel), Chicago, IL, Blitman & King (Donald Oliver, of counsel), Syracuse, NY, for plaintiffs.

Foley & Lardner (Stanley Jaspan, of counsel), Milwaukee, WI, MacKenzie Smith Lewis Michell & Hughes (Nancy L. Pontius, of counsel), Syracuse, NY, for defendant.

### MEMORANDUM–DECISION AND ORDER

SCULLIN, District Judge:

### INTRODUCTION

This is a class action brought pursuant to the Fair Labor Standards Act, 29 U.S.C.

§§ 201 *et seq.* ("FLSA") and specifically, § 203(*o* ) of Title 29 ("Section 203(*o*)")[1] by Plaintiffs, employees and former employees of Nestle Foods Corporation ("Defendant") who allege that they are entitled to overtime (time and a half) compensation for time spent changing into and out of uniforms required to be worn by them by Defendant. The matter is presently before the court on Defendant's motion for summary judgment and Plaintiffs' cross-motion to strike Defendant's affirmative defense that the amount of clothes-changing time is *de minimis* and therefore not compensable under the FLSA. The court heard oral argument on November 13, 1992 in Syracuse, New York and reserved decision on the motions. This constitutes the Decision and Order of the court.

### BACKGROUND

Plaintiff initiated this lawsuit in March 1992, on behalf of herself and approximately 549 other similarly situated employees who, at the time in question, were employed by Defendant at its food processing facility in Fulton, New York. There are two unions at the Fulton plant, Locals 1974 and 1975 of the Retail, Wholesale & Department Store Union, AFL–CIO; the former ("Local 1974") represents production and maintenance employees, the latter ("Local 1975") represents laboratory employees.[2] Both unions, or their predecessors, have bargained for and entered into collective bargaining agreements with Defendant since 1942. At the time that Plaintiffs[3] commenced this lawsuit, both unions had collective bargaining agreements with Defendant effective May 21, 1990 to May 21, 1993.

Prior to March 1990, Defendant did not require Plaintiffs to wear uniforms. Defendant did, however, maintain a voluntary uniform program, pursuant to which employees

---

1. Section 203(*o* ), as more fully set forth on page ten of this Decision, provides exclusions from the general rule that time spent in excess of forty hours per week shall be compensated at an overtime rate for certain employees.

2. Hereinafter, the court's reference to the "union" will encompass both unions, unless otherwise noted.

3. For the sake of simplicity, the court will refer to Plaintiff and the other class members collectively as "Plaintiffs."

who chose to change into uniforms had to do so on their own time; i.e., *either* prior to punching in or after punching out.[4] In March 1990, Locals 1974 and 1975 commenced contract negotiations with Defendant. At that time, Defendant proposed amending the collective bargaining agreement "by adding '[t]he Company will maintain a mandatory employee uniform program,'"[5] "as a means of enhancing sanitation in the Fulton food processing facility" ("Proposal No. 6").[6]

Local 1974, by way of counterproposal, requested that Defendant adopt the following four conditions:

1.  that employees be allowed to wear union patches on their uniforms;

2.  that employees who worked in colder areas of the factory be allowed to wear jackets or vests over their uniforms;

3.  that employees be allowed to choose the color of their uniforms; and

4.  that employees be compensated at a time-and-a-half rate for time spent changing into and out of uniforms.[7]

Ultimately, Defendant acquiesced to the Union patch and jacket/vest requests, but rejected Local 1974's conditions regarding choice of colors and changing time compensation. Local 1974 subsequently withdrew the color choice proposal, but renewed its request for compensation for clothes-changing time and further requested that employees be allowed to wear their uniforms if they left the plant during lunch. Defendant acceded to the lunch provision, but again maintained that employees would not be compensated for clothes-changing time.

It is undisputed that Defendant's final position, and its position throughout negotiations, was that Plaintiffs would not be compensated for clothes-changing time. It is also undisputed that, at the close of negotiations, when the Union "signed off" on Proposal No. 6, the Union understood that Plaintiffs would not be paid for clothes-changing time.[8] In this regard, Defendant contends that, with the Defendant's position of non-compensation unwavering, "Local 1974 then accepted [Defendant's] proposal," Defendant's 10J at ¶ 12, as did Local 1975 "under the same terms and conditions as had been negotiated with Local 1974."[9]

Plaintiffs do not dispute that, at the time that the union "signed off" on Proposal No. 6, they understood that Defendant had not conceded the issue of clothes-changing time.[10] Plaintiffs maintain, however, that although they *understood* at the close of negotiations that they would not be paid for clothes-changing time, that at no time during negotiations, did Local 1974 or 1975 *expressly agree* not to be paid for the time spent changing clothes.[11]

In January 1991, by way of notice, Defendant informed union officials and employees that the mandatory uniform program would become effective on February 25, 1991. The notice included a statement that "[e]mployees are required to change into/out of their employee uniforms on their own time."[12] The Defendant contends that no union official or

---

**4.**  Defendant's 10(J) Statement ("Defendant's 10J") at ¶ 5.

**5.**  *Id.* at ¶ 6.

**6.**  *Id.* at ¶ 7.

**7.**  *See id.* at ¶ 9.

**8.**  *See* MacKenzie Aff., Doc. 17, exh. "Y"; Jaspan Aff., Doc. 16, exh. "B" at 31, 34, 50; *id.*, exh. "C" at 29–30; *id.*, exh. "D" at 24.

**9.**  *Id.* at ¶ 13.

**10.**  *See* Jaspan Aff., Doc. 16, exh. "C" at 29–30.

**11.**  Plaintiffs' 10(J) Statement ("Plaintiffs' 10J") at ¶ 14 (other references omitted) (emphasis add-

ed). Although Plaintiffs make this assertion in their 10J statement, Defendant has submitted pertinent minutes (which Plaintiffs have not disputed) from the third step of the grievance procedure in which Myron Johnson, Local 1974's International Representative responsible for the negotiations between the unions and Defendant, stated that "admittedly at negotiations we agreed to change into/out of uniforms on our own time...." MacKenzie Aff., Doc. 17, exh. "Y." Moreover, Johnson stated during his deposition that Defendant's position was for non-compensation at the point that the union agreed to the mandatory uniform program. Jaspan Aff., Doc. 16, exh. "C" at 29–30.

**12.**  Defendant's 10J at ¶ 15.

employee objected to the program "at that time."[13] Although they do not specifically dispute that statement, Plaintiffs respond that the unions *had* previously objected to the program, in November 1990. Further, Plaintiffs contend that they had voiced their belief that Defendant's failure to compensate them for the changing time would violate the FLSA,[14] and that the Union informed Defendant that it intended to bring a law suit to challenge such a policy as a violation of the FLSA.[15] In April 1991, Plaintiffs filed a grievance challenging the changing policy, which was denied. Local 1974 appealed this decision and it was again denied.

Defendant now moves for summary judgment seeking dismissal of the complaint upon two bases, only one of which is dispositive. Defendant asserts that as a matter of law, Plaintiffs have no claim for compensation for clothes-changing time under § 203(*o* ) as such has been excluded by "custom or practice" under a collective bargaining agreement.

Plaintiffs oppose Defendant's motion for summary judgment upon the basis that the clothes-changing time has not been excluded pursuant to § 203(*o* ) in that, *inter alia,* they never expressly agreed to not be paid for clothes-changing time. Plaintiffs further allege that the previous practice of non-compensation cannot constitute a "custom or practice" under § 203(*o* ) since it was pursuant to a voluntary, rather than a mandatory clothes-changing program.

Plaintiffs also cross-move to strike Defendant's third alternative affirmative defense, *to wit,* that Plaintiffs' claim for clothes-changing time is subject to a *de minimis* defense. As the court need not reach Plaintiffs' cross-motion, it limits its analysis to Defendant's motion for summary judgment.

## DISCUSSION

Resolution of the instant motion turns upon well established principles of summary judgment. It is well-settled that "[s]ummary judgment is appropriate when 'there is no genuine issue as to any material fact' and 'the moving party is entitled to a judgment as a matter of law.'" *Frankel v. Bally,* 987 F.2d 86, 88 (2d Cir.1993) (citations omitted). "A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Aldrich v. Randolph Cent. Sch. Dist.,* 963 F.2d 520, 523 (2d Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 440, 121 L.Ed.2d 359 (1992) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). Furthermore, in determining whether a genuine issue of material fact exists, a district court "must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party." *Gibson v. American Broadcasting Co.,* 892 F.2d 1128, 1132 (2d Cir. 1989). The court must look to the substantive law to determine which facts are material. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. As to materiality, the Supreme Court has stated that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* Thus, Defendant bears the burden of demonstrating that there are no genuine issues of material fact concerning the non-compensability of the clothes-changing time, and that as a matter of law, Plaintiffs' complaint should be dismissed.

It has been noted that "'the purpose of Rule 56 is to enable a party who believes there is no genuine dispute as to a specific essential fact to demand at least one sworn averment of that fact before the lengthy process of litigation continues.'" *Sample v. Schuller Int'l, Inc.,* 836 F.Supp. 876, 879 (S.D.Ga.1993) (quotation omitted). Furthermore, "[s]ummary judgment is appropriate where the nonmovant 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of

---

**13.** *Id.*

**14.** Plaintiffs' 10J at ¶ 15.

**15.** Plaintiffs' 10J, Memo. of Law in Opposition to Defendant's Motion for Summary Judgment, Doc. 25 at 4.

proof at trial.'" *Id.* (citations omitted). Accordingly, in determining the propriety of summary judgment, "'[f]actual disputes that are irrelevant or unnecessary will not be counted.'" *Id.* at 879 (quotation omitted). "The nonmovant 'must present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" *Id.* (quotation omitted). "Mere conclusory statements or reliance on the pleadings, ... will not suffice,...." *Id.* (citations omitted).

Guided by these principles, the court must first examine the relevant substantive law, namely, § 203(*o*) and 29 U.S.C. § 207 ("Section 207"). Section 207 mandates that employees "engaged in commerce or in the production of goods for commerce for a workweek longer than forty hours" shall be compensated at a rate not less than one and one-half times the regular rate of pay. 29 U.S.C.A. § 207 (West 1965 & Supp.1993). However, certain time may be excluded from compensation pursuant to § 203(*o*):

> *Hours Worked.*—in determining for the purposes of sections 206 and 207 of this title the hours for which an employee is employed, there shall be excluded any time spent on changing clothes or washing at the beginning or end of each work day which was excluded from measured working time during the week involved *by the express terms of or by custom or practice under a bona fide collective bargaining agreement* applicable to the particular employee.

29 U.S.C.A. § 203(*o*) (West 1978) (emphasis added).

It is undisputed that the collective bargaining agreement is devoid of any express terms excluding the time spent changing clothes in the collective bargaining agreement; Proposal No. 6 as written provides only that "[t]he Company will maintain a mandatory uniform program."[16] Rather, the focal point of the parties' dispute is whether the changing time has been excluded "by custom or practice under a bona fide collective bargaining agreement."

Defendant contends that there are no genuine issues of material fact concerning the non-compensability of clothes-changing time for the Plaintiffs, in that the Company's policy of non-compensation for clothes-changing time is a "custom or practice under a bona fide collective bargaining agreement." As the non-compensation provision was fully negotiated between the parties under the new collective bargaining agreement, Defendant argues that Plaintiff cannot now object to the non-compensation.[17]

The Second Circuit has not addressed the interpretation of § 203(*o*)—in fact, there is a dearth of caselaw on this issue. However, three cases provide sufficient guidance for the court's resolution of this motion. *See Hoover v. Wyandotte Chemicals Corp.,* 455 F.2d 387, 389 (5th Cir.), *cert. denied,* 409 U.S. 847, 93 S.Ct. 52, 34 L.Ed.2d 88 (1972); *Saunders v. John Morell & Co.,* No. C88–4143 1991 WL 529542 (N.D.Iowa Dec. 24, 1991); *Williams v. W.R. Grace & Co.,* 247 F.Supp. 433, 434–435 (E.D.Tenn.1965). In each of these cases, in determining whether the employees had a claim under the FLSA for overtime compensation for clothes-changing time, the courts addressed the question of whether the union had bargained away its right to the overtime pay.

In *Hoover,* the defendant (employer) required the plaintiffs (employees) to change into work clothes, and to shower at the end of their shift, due to the danger of mercury contamination. The plaintiffs requested pay for the changing and showering time, and, during negotiations for a new contract, the defendant proposed that employees be paid fifteen minutes overtime daily for such time. Although not expressly provided for in the labor contract, the proposal outlined by the company during negotiations was implemented when the defendant's plant opened in July of 1964.

This practice continued until April of 1968, when, on the eve of contract negotiations, the union requested that the employer pay twenty-three to twenty-five minutes of overtime compensation. The employer agreed to increase the compensated time to a maximum

---

16. Plaintiffs' 10J at ¶ 6.

17. *See* Defendant's Reply Memo., Doc. 30 at 2–6.

of twenty minutes, but the union rejected this offer. Subsequently, the parties entered into a collective bargaining agreement which did not contain an express provision for the clothes-changing compensation; yet, the employer continued to pay employees for the fifteen minutes of daily changing time, even after the completion of contract negotiations.

After the new collective bargaining agreement was in place and with the fifteen-minute payment policy continuing, plaintiffs brought suit in federal court pursuant to the FLSA. The plaintiffs demanded, *inter alia*, overtime compensation for the actual time spent on the clothes-changing and showering activities, over and above the fifteen-minute limit imposed by the employer. The district court granted summary judgment for the defendant upon the basis that any time beyond the fifteen minutes had been excluded by custom or practice under the collective bargaining agreement. *Id.* at 388.

The *Hoover* plaintiffs' principal argument on appeal was that any custom or practice to exclude compensation beyond the fifteen-minute time limit ended with the union's rejection of this limitation at the 1968 negotiations, notwithstanding, as the court noted, "both the union's failure to press its demand to conclusion and the defendant's continuation of the fifteen-minute policy after the execution of the 1968 contract." *Id.* at 389. Affirming the lower court's finding that any time beyond the fifteen minutes had been excluded by custom or practice under § 203(*o*) by the employer, the Fifth Circuit stated that

> [w]e are somewhat chagrined by the plaintiffs' assertion in this case. First, we find it difficult to conclude that the union's abandonment of its 1968 demand for twenty-three to twenty-five minutes of pay for clothes-changing and showering did not amount to acquiescence in the defendant's long-standing fifteen-minute policy. More importantly, we think judicial approbation of the plaintiffs' position would constitute a holding that what a union fails to achieve through the process of collective bargaining will be delivered to it under the provisions of the [FLSA]. The defendant in this case has shown a history of its deal-

ings with the plaintiffs' union in exempting from payment any time exceeding fifteen minutes in which an employee spends changing clothes and showering. Furthermore, it has been shown that the collective bargaining negotiations between the union and the company encompassed the company's policy concerning payment for such activities.

*Id.*

In the second case, *Saunders,* an FLSA action was brought by employees who were required by their employer to wear protective clothing and had been compensated for twelve minutes per day for the clothes-changing time. Prior to 1983, the collective bargaining agreements covering the employees provided for the twelve minutes' clothes-changing compensation, but in subsequent negotiations, the parties eliminated this time from the agreements. Instead, the new agreements contained provisions that stated that the "wage rate reflects pay for time spent changing clothes and cleaning safety equipment." *Id.* at *2. The employees asserted their rights to overtime compensation for the clothes-changing time under the FLSA, and the employer countered that such time had been excluded pursuant to § 203(*o*).

In determining that the clothes-changing time was non-compensable, the court in *Saunders* first addressed whether the employees had bargained away their right to compensation for the clothes-changing time, i.e., whether the parties' agreement to eliminate the clothes-paying provision from the collective bargaining agreement constituted an exclusion under § 203(*o*). In granting summary judgment for the employer, the court found as follows:

> The Unions and Morell negotiated specifically on the question of payment for time spent putting on and taking off safety equipment. The clothes-changing provision that previously had compensated workers for a fixed amount of time was deleted. That deletion was a clear and unambiguous expression of the parties' intent to eliminate clothes-changing as a separate compensable event. Plaintiffs' attempt to distinguish the absence of a provi-

sion for nonpayment is not persuasive on the undisputed facts of this case. The court holds that the negotiated elimination of a specific term of payment for clothes-changing is an express exclusion under § 203(o). Simply stated, the Union bargained away compensation for putting on and taking off safety equipment. *Id.* at \*3. The *Saunders* court went on to find that, even if not excluded by express provision, the clothes-changing time was excluded by custom or practice, as evidenced by the fact that the clothes-changing provision had been deleted in 1983 and that all subsequent agreements had omitted the provision. *Id.* at \*4.

Lastly, in *Williams*, employees who faced possible contamination of both themselves and their clothes on the job·who brought an action under the FLSA for overtime compensation for time spent changing clothes and washing at the completion of their normal working hours. During negotiations for certain bargaining contracts, the employees had demanded overtime compensation for the time spent on these activities, but abandoned their demand prior to the completion of negotiations. The plaintiffs renewed their demands during negotiations for a subsequent contract, and the employer agreed to pay the employees for time spent in decontamination, but maintained a no-pay policy for clothes-changing time. In granting summary judgment for the employer, the court noted that

> [t]he defendants have shown conclusively, and without dispute, that the history of their dealings with the plaintiffs' trade union was that a custom and practice were followed exempting clothes-changing [ ] time from wage-payment. They have shown also that this problem was consistently an active issue in the negotiations leading up to the bargaining agreements.

*Williams*, 247 F.Supp. at 435 (internal citation omitted).

In applying the relevant caselaw, the court is cognizant of the factual differences which make the present case somewhat unique. Unlike the situation in *Hoover*, the practice of non-compensation for clothes-changing time in the present case was pursuant to a voluntary uniform policy. Moreover, unlike the plaintiffs in *Williams* or *Hoover*, the facts of this case do not clearly support a finding that the present Plaintiffs "abandoned" their demand for compensation. They did object to the non-payment (albeit months after the close of negotiations), and pursued the matter through the grievance process. As is often the case, however, it is the similarities between the case at bar and the above authorities that are dispositive.

Turning to one such similarity, here, as in *Hoover*, employees sought to modify, through negotiation, a past practice concerning clothes-changing·compensation. However, in *Hoover*, the employees sought to increase the amount of compensated time, whereas in the present case the employees were attempting to obtain that compensation for the first time. Plaintiffs have not satisfied the court that the difference between a voluntary or mandatory uniform policy dictates a different conclusion. The court finds controlling that (a) a practice of non-compensation existed; (b) § 203(o) does not distinguish between voluntary and mandatory practices and, most significantly; (c) as in *Hoover*, the evidence supports a finding that the employees in the present case are attempting to procure through the FLSA what they were unsuccessful in achieving through negotiations, something which the court cannot countenance.

The similarities between the present case and *Saunders* are similarly compelling. Here, although there was a negotiated omission, rather than deletion, of a provision for compensation, the end result is the same: the employees bargained away their right to clothes-changing compensation in exchange for other considerations. The present facts support a finding that a past custom/practice under a collective bargaining agreement of non-compensation for clothes-changing continued under the new collective bargaining agreement, and in exchange for this, the employer made concessions for which the parties bargained.

## CONCLUSION

The court finds that fundamental principles of summary judgment mandate a finding

for Defendant in this case. Plaintiffs have failed to provide any evidence that raises a genuine issue of material fact. Plaintiffs agreed to Proposal No. 6 with the understanding that they would not be paid for clothes-changing time; therefore, the custom/practice of non-payment for this time under a collective bargaining agreement endured.

Defendant's motion for summary judgment is GRANTED and Plaintiffs' complaint dismissed. Resolution of Plaintiffs' cross-motion is thus rendered unnecessary.

**IT IS SO ORDERED.**